UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

JOSEPH GARDI,                                   Case No.: _____

        Plaintiff,

vs.

UNITED HEALTHCARE SERVICES, INC.,
and HCA INC.,

        Defendants.

_____/

## COMPLAINT

COMES NOW, Plaintiff, JOSEPH GARDI (hereinafter "Plan Beneficiary"), through his undersigned counsel, and sues Defendants, UNITED HEALTHCARE SERVICES, INC., and HCA INC., (hereinafter "Defendants"), and alleges:

### NATURE OF ACTION, PARTIES, JURISDICTION AND VENUE

1. This is a civil action arising under the laws of the United States for legal and equitable relief to redress violations by the Defendants of the Plaintiff's rights secured by (i) the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 et seq. ("COBRA") (ii) the Employment Retirement Income Security Act of 1974, Title 29, United States Code Sections 1000-1461 ("ERISA"), for Defendants' wrongful denial of Plaintiff's health insurance benefits and refusal to supply plan documents, and requested information to Plaintiff, (iii) and the Medicare Secondary Payer laws, 42 U.S.C.S. § 1395y(b); and for damages, attorney's fees and costs, and for other relief within the subject matter jurisdiction of this Court.

2. This is an action that involves parties and property located within the venue of this Court, and venue is otherwise proper pursuant to 28 U.S. Code § 1391.

3.   At all times material hereto, the Plan Beneficiary was a citizen and is and was an individual residing in West Palm Beach County, Florida and is *sui juris*.

4.   At all times material hereto, the Defendant, UNITED HEALTHCARE SERVICES, INC. (hereinafter "United Healthcare" and/or "UHC"), is and was a health insurance company authorized to, and doing business providing health insurance coverage, administration of health benefits and related services in the State of Florida and is subject to the jurisdiction of this Court. At all times material hereto, United Healthcare insured and administered employer health benefits and administered health insurance claims.

5.   At all times material hereto, the Defendant, HCA, Inc. (hereinafter "HCA"), is and was a self-funded employer that sponsored a health insurance plan (the "HCA Health and Welfare Benefits Plan") of which Plaintiff is and was a beneficiary. HCA employed more than 20 employees at all relevant times.

6.   At all times material hereto, the Defendant United Healthcare was a plan and claims administrator for HCA.

7.   Under the terms of the Plan administered by Defendant, United Healthcare, patients who are covered under plans that Defendant administers, like Plaintiff, are entitled to payment for medically necessary health benefits and to disclosure of plan documents.

8.   This Court possesses original jurisdiction pursuant to Title 29, United States Code, Section 1132(e), and Title 28, United States Code, Section 1331.

9.   Venue is proper in the Southern District Court of Florida pursuant to Title 29, United States Code, Section l 132(e) and Title 28, United States Code, Section 139l(b) (1) since the facts and circumstances *(e.g.,* claim denial and failure to provide plan documents, COBRA violations) giving rise to this cause of action transpired (in whole or in part) in Palm Beach County, Florida

and (2) Defendants conduct a substantial amount of business in this District and in Palm Beach County, Florida.

10. All conditions precedent to the institution of this action (e.g., administrative pre-suit appeals) have occurred, been performed, been waived, or were futile.

## GENERAL ALLEGATIONS

## HEALTH INSURANCE COVERAGE AND MEDICAL BENEFITS STRUCTURE

11. At all material times, the Plan Beneficiary was covered by the health insurance plan sponsored and self-funded by his ex-wife's employer, HCA, Inc. This plan is called the HCA Health and Welfare Benefits Plan (the "Plan"). A copy of the Summary Plan Description ("SPD") is attached hereto as **Exhibit A**. The claims administrator for the Plan is Defendant United Healthcare.

12. The Plan Beneficiary was initially insured through the Plan as spouse of Lisa Gardi, an HCA, Inc. employee under Group/Acc#: 730152 with Member ID. No. 977645214, Group Name: HCA, Inc. Mr. and Mrs. Gardi then went through a divorce. As a result of the divorce coverage under Member ID. No. 977645214 for Mr. Gardi ended on June 13, 2018 ("the Pre-Cobra Period").

13. On or about July 1, 2016, the Plan Beneficiary was granted Medicare Part A due to his disability. However, Mr. Gardi did not utilize Medicare Part A and has never had Medicare Part B. At all times material, his primary health insurance plan was the HCA Health and Welfare Benefits Plan. UHC always paid his claims without issue during the Pre-Cobra Period.

14. As a result of the divorce, the Plan Beneficiary then made a COBRA election to continue receiving medical benefits and coverage through the Plan under Group/Acc#: 730152

with Member ID: A903298509, Group Name: HCA, Inc. Coverage became effective on June 14,

2018 ("the Post-Cobra Period").

15.     After the COBRA election was made by the Plan Beneficiary United Healthcare

has intentionally denied claims and reduced medical benefits to the Plan Beneficiary and the plan

and has failed to act in good faith in handling his claims. United Healthcare's actions effectively

amount to discrimination against Mr. Gardi due to his medical condition, disability and status as

subscriber under COBRA.

16.     ERISA imposes duties of good faith and fair dealing that preclude deceptive and

unreasonable claim handling tactics. *Wilson v. Walgreen Income Protection Plan*, 2013

U.S.Dist.LEXIS 62021 (M.D.Fla. April 29, 2013).

17.     United Healthcare and HCA have taken multiple actions in violation of ERISA

and COBRA provisions and the Medicare Secondary Payer Act.

18. As for Plan and claim administration, the extent of each Defendant's involvement is

not entirely clear at this juncture, but each Defendant was involved, in whole or in part.

## PLAN BENEFICIARY'S MEDICAL CONDITIONS
## AND MEDICALLY NECESSARY TREATMENTS

### A.  VITAMINS AND MINERALS INFUSION AND CHELATION

19.  At all times material hereto, the Plan Beneficiary has suffered from neurotoxicity of

the brain[1] which was diagnosed and confirmed by the Environmental Health Center at Dallas,

8345 Walnut Hill Lane, #220, Dallas,  TX  75231, on or about July 2015.

---

[1] Neurotoxicity occurs when the exposure to natural or manmade toxic substances (neurotoxicants) alters the normal activity of the nervous system. This can eventually disrupt or even kill neurons, key cells that transmit and process signals in the brain and other parts of the nervous system. Neurotoxicity can result from exposure to substances used in chemotherapy, radiation treatment, drug therapies, and organ transplants, as well as exposure to heavy metals such as lead and mercury, certain foods and food additives, pesticides, industrial and/or cleaning solvents, cosmetics, and some naturally occurring substances. Symptoms may appear immediately after exposure or be delayed. They may include limb weakness or numbness; loss of memory, vision, and/or intellect; headache; cognitive and behavioral problems; and sexual dysfunction. Individuals with certain disorders may be especially

Case No.: _____

20.    Between approximately 2015 through 2017, treatment of this condition was deemed medically necessary[2]. During these years United Healthcare approved treatment of the condition through vitamin and minerals IV therapy and chelation ("Vitamin and Minerals Infusion"). Mr. Gardi received the treatment at Balance Health and Wellness Centers in Palm Beach Gardens ("Balance Health and Wellness"). However, United Healthcare required that the Plan Beneficiary first pay out of pocket and would then reimburse him during this time period. United Healthcare reimbursed the Plan Beneficiary on several occasions, as such, it was a covered benefit under the Plan. However, United Healthcare would fail to reimburse the Plan Beneficiary at times even though they pre-authorized the medical benefits and treatment, leaving him with significant out of pocket expenses and without recourse to obtain the medically necessary treatments.

21.    On or about January 31, 2018, United Healthcare arbitrarily denied the Plan Beneficiary's Vitamins and Minerals Infusion treatment. *See* **Exhibit B** ("the Denial Letter). Balance Health and Wellness initiated an appeal on or about February 22, 2018. Thereafter, United Healthcare upheld its denial despite the detrimental health effects lack of treatment would have on the Plan Beneficiary.

22.    On or about April 13, 2018, and as a result of issuance of the Denial Letter, counsel for the Plan Beneficiary requested a copy of the Summary Plan Description ("SPD"). *See* **Exhibit C**. The SPD was thereafter requested multiple times by phone from United Healthcare

---

vulnerable to neurotoxicants. *See* National Institute of Neurological Disorders and Stroke, Neurotoxicity Information Page, https://www.ninds.nih.gov/Disorders/All-Disorders/Neurotoxicity-Information-Page (last visited March 15, 2019).

[2] Treatment involves eliminating or reducing exposure to the toxic substance, followed by symptomatic and supportive therapy. The prognosis depends upon the length and degree of exposure and the severity of neurological injury. In some instances, exposure to neurotoxicants can be fatal. In others, patients may survive but not fully recover. In other situations, many individuals recover completely **after treatment**. *See* National Institute of Neurological Disorders and Stroke, Neurotoxicity Information Page, https://www.ninds.nih.gov/Disorders/All-Disorders/Neurotoxicity-Information-Page (last visited March 15, 2019).

and HCA. Both defendants failed to provide a copy of the SPD to the Plan Beneficiary. It was not until the undersigned submitted a request for documents and after multiple calls, that HCA provided the SPD on approximately September 25, 2018. Nevertheless, the copy provided was incomplete and only pages 1 through 148 were provided. *See* **Exhibit D**. The full complete copy was finally provided on or about November 2, 2018, by United Healthcare's legal counsel.

23.   United Healthcare's continued refusal to authorize Vitamins and Minerals Infusion treatment has been unreasonable and arbitrary and has had detrimental health effects on Mr. Gardi. The lack of treatment caused him to end up in the Emergency Room twice, on or about July 17, 1018 and November 9, 2018. Furthermore, due to lack of treatment, he now requires care by his family and third parties and is no longer self-sufficient. He has suffered severe dehydration, excessive weight loss, anxiety and debilitation of his entire body to the extent he has trouble walking, showering and driving.

### B.   OCTAGAM IMMUNOGLOBULIN G (IGG) IV TREATMENT

24. At all material times, the Plan Beneficiary has suffered from Common variable immune deficiency (CVID)[3].

25. IGG is a medically necessary treatment to treat the Plan Beneficiary's CVID. *See* **Exhibit E**. During the Pre-Cobra period, United Healthcare approved this treatment for Mr. Gardi without fail. However, during the Post-Cobra period, United Healthcare began to make arbitrary decisions regarding the IGG treatment to the detriment of Mr. Gardi.

---

[3] Common variable immune deficiency (CVID) is a disorder that impairs the immune system. People with CVID are highly susceptible to infection from foreign invaders such as bacteria, or more rarely, viruses and often develop recurrent infections, particularly in the lungs, sinuses, and ears. Pneumonia is common in people with CVID. Over time, recurrent infections can lead to chronic lung disease. Affected individuals may also experience infection or inflammation of the gastrointestinal tract, which can cause diarrhea and weight loss. Abnormal accumulation of immune cells causes enlarged lymph nodes (lymphadenopathy) or an enlarged spleen (splenomegaly) in some people with CVID. *See* U.S. National Library of Medicine, Common Variable Immune Deficiency, https://ghr.nlm.nih.gov/condition/common-variable-immune-deficiency#resources (last visited March 17, 2019).

26.  In July 2018, United Healthcare began denying IGG treatment which caused Mr. Gardi to have to hire counsel as related to his medical benefits. As a result of the lack of the medication, the Plan Beneficiary was in the hospital emergency room on or about July 17, 2018 and incurred medical expenses.

27.  By letter dated July 17, 2018, the Plan Beneficiary submitted an expedited request for approval of IGG treatment. *See* **Composite Exhibit F**. Mr. Gardi was being denied IGG for several weeks despite the fact that he was entitled to receive the medication as a covered service and benefit. United Healthcare only began presenting multiple obstacles and denying Mr. Gardi his medically necessary medication after the COBRA election. United Healthcare's actions were not in good faith and constituted unreasonable claim handling tactics. ERISA imposes duties of good faith and fair dealing that preclude deceptive and unreasonable claim handling tactics. *See Wilson v. Walgreen Income Protection Plan*, 942 F. Supp. 2d 1213 (M.D.Fla. April 29, 2013).

28.    As a result of United Healthcare's actions and its failure to authorize the Medication, the Plan Beneficiary was forced to pay out of pocket. United Healthcare's failure to provide the Medication caused prejudice and delay to the Plan Beneficiary and caused injury and detrimental health effects. United Healthcare denied medical coverage and benefits due to the Plan Beneficiary despite the fact the IGG had been pre-approved. Instead *after the COBRA election*, United Healthcare pre-conditioned insurability on Mr. Gardi obtaining new lab work in contravention of COBRA laws.

29.     United Healthcare's unlawful actions caused a disruption in the continuation of care to the Plan Beneficiary. UHC failed to consider the negative health effects the disruption of care would have by delaying and denying him the medically necessary IGG prescriptions.

30.     The Plan Beneficiary also requested the following documents via the Expedited Request for Approval of IGG:

      a)      Copy of applicable Contract and Health Insurance Policy;

      b)      All medical records United Healthcare has considered in continuing to deny benefits to the Member;

      c)      A copy of the plan and plan provisions which justify the actions of United Healthcare;

      d)      Copies of the Internal Rules, Guidelines, or Protocol which justify the actions of United Healthcare relevant to the Member's claim;

      e)      A copy of all letter and email correspondence exchanged between United Healthcare and the Member relevant to the claim; and

      f)      A copy of all letter and email correspondence exchanged between United Healthcare and Diplomat Specialty Pharmacy relevant to the claim; and

      g)      A copy of all letter and email correspondence exchanged between United Healthcare and Wage Works, the COBRA administrator relevant to the claim; and

      h)      A copy of all insurance policies which would provide coverage to the Member, including addendums and endorsements relevant to the claim.

            *See* **Composite Exhibit F**. ("the Second Request for Plan Documents").

31.     The Plan documents and the requested documents were not provided. United Healthcare and HCA failed to provide the requested documents as required by law. United Healthcare was in violation for its refusal to provide plan documents as of April 13, 2018 until November 2018, as such, Defendants are subject to civil penalties of $110 per day due to the outright refusal to provide plan documents.

32.     On or about July 20, 2018, the undersigned called United Healthcare to follow up on the request for expedited approval of IGG dated July 17, 2018. Justin of United Healthcare stated that the IGG had been approved from July 16, 2018 through October 14, 2018, and provided authorization number A050314270. Despite the approval, Mr. Gardi's health had already suffered for having missed treatments resulting from United Healthcare's denial and delay.

33.     Thereafter, a few months later, United Healthcare again denied and failed to pay for the Plaintiff's IGG treatment causing additional delays in treatment, injury to the Plaintiff, debilitation of the Plaintiff's health and out of pocket expenses. As a result, the undersigned sent a Request for Expedited Appeal dated October 21, 2018 to approve IGG prescriptions and a demand letter dated November 2, 2018 to United Healthcare. *See* **Composite Exhibit F.**

34.     Thereafter, United Healthcare submitted a letter to the Plan Beneficiary stating that his claims had been re-processed and payment was made for the IGG treatment. *See* **Exhibit G**. Despite the re-processing of claims, Mr. Gardi's health had already suffered for having had missed treatments resulting from United Healthcare's denial of IGG treatment.

35.     By virtue of multiple violations, inconsistent claim handling processes, wrongful denial of benefits and plan documents by the Defendants and their agents, Plaintiff was forced to retain the services of the undersigned counsel, and has agreed to pay said attorney a reasonable fee for her services.

**C.   HYPERBARICS TREATMENT**

36. At all material times, the Plan Beneficiary has suffered from CVID and Immunodeficiency.

37. Hyperbarics is a medically necessary treatment to treat the Plan Beneficiary's conditions. On or about September 10, 2018, United Healthcare issued an authorization letter for Hyperbarics treatment. *See* **Exhibit H**. However, shortly thereafter, United Healthcare began to make arbitrary decisions regarding the Hyperbarics treatment to the detriment of Mr. Gardi.

38. United Healthcare began denying Hyperbarics treatment during the authorization period which caused Mr. Gardi to have to incur additional out pocket expenses and continued decline of his medical conditions.

39. United Healthcare has continued to arbitrarily deny Mr. Gardi the treatment for several weeks despite the fact that he was entitled to receive the treatment as a covered service and benefit. United Healthcare only began presenting multiple obstacles and denying Mr. Gardi his medically necessary treatment after the COBRA election. United Healthcare's actions are not in good faith and constitute unreasonable claim handling tactics.

40. United Healthcare's failure to provide the treatment has caused prejudice and delay to the Plan Beneficiary and caused injury and detrimental health effects.

41. United Healthcare's unlawful actions caused a disruption in the continuation of care to the Plan Beneficiary, without having considered the negative health effects the disruption would have by delaying and denying him the medically necessary treatment. UHC again engaged in unreasonable claim handling tactics.

42. Once again, United Healthcare caused additional delays in treatment, additional injury to the Plaintiff, debilitation of the Plaintiff's health and out of pocket expenses. As a result, the undersigned sent a Request for Emergency Appeal dated March 12, 2019 to approve Hyperbarics and Vitamins and Minerals Infusions, but no action has been taken. *See* **Exhibit I.**

43. By virtue of multiple violations, inconsistent claim handling processes, wrongful denial of benefits and plan documents by the Defendants and their agents, Plaintiff continues to suffer and was again forced retain the services of the undersigned counsel, and has agreed to pay said attorney a reasonable fee for her services.

## COUNT I
## VIOLATION OF §502 (a) of ERISA AGAINST DEFENDANTS

44. Plaintiff re-adopts and re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiff is a Plan Beneficiary under §502(a) of ERISA.

46. As a Plan Beneficiary under §502(a) of ERISA, Plaintiff is entitled to recover benefits under the terms of the plan administered by Defendants, their agents, and employees, under which she is covered.

47. As a Plan Beneficiary under §502(a) of ERISA, Plaintiff is entitled to clarification of his rights to benefits under the terms of the Plan administered by Defendants, their agents, and employees, under which he is covered.

48. Defendants, their agents, and employees are obligated to make payment to Plaintiff for medical services under the terms of the Plan at issue in this action in accordance with the following language quoted in the Health and Welfare Benefit Plan Summary of Benefits, Medically Necessary Services section found on pg. 36, states in relevant part:

*"The plan pays benefits only for services that are determined by the Plan Administrator to be medically necessary. To be considered "medically necessary," a service or supply must:*

- *Be consistent with the diagnosis*
- *Meet quality medical standards*
- *Be the most appropriate level of service*
- *Be recognized as an accepted medical practice and have received the required federal approval*
- *Not be primarily for the comfort and convenience of the patient*

*(emphasis added).*

49.   Defendants, their agents, and employees are obligated to make payment for specialty pharmacy services to Plaintiff under the terms of the Plan at issue in this action in accordance the Health and Welfare Benefit Plan Summary of Benefits, Specialty Pharmacy Services section found on pg. 45.

50. Defendants, their agents, and employees, failed to make payment of benefits to Plaintiff for Vitamins, Minerals and Chelation, in violation of ERISA.

51. Defendants, their agents, and employees, failed to make consistent payment of benefits to Plaintiff for IGG and Hyperbarics treatment although the services were pre-authorized.

52.   Defendants, their agents, and employees, continue to deny payment of benefits to Plaintiff for Vitamins, Minerals and Chelation and Hyperbarics in violation of ERISA.

53.   Defendants their agents, and employees never informed Plaintiff of his right to a case management coordinator and have never appointed a case management coordinator to handle Plaintiff's complex claims as required by the Case Management section of the Health and Welfare Benefit Plan Summary of Benefits, pg. 48 which states in relevant part, as follows:

> A case management coordinator will work with you, your family and your physician to manage and coordinate hospital and community **resources if you need lengthy and complicated treatment.** Your Claims Administrator will also work with you **to manage the cost of care while meeting your needs and the goals of your treatment plan.** Your case manager may recommend a treatment plan that includes alternative settings such as skilled nursing facilities or the patient's home. Other services such as home health, hospice and skilled nursing services are also subject to case management. The plan may also pay for special services such as home modifications, medical equipment, nurses and caregiver training for the patient's family within certain limitations and special provisions.

> When case management determines that specific services that are not usually covered under the plan will achieve the most efficient and effective use of

medical resources, **alternative benefits may be implemented by a separate written treatment agreement.**

Providing alternative benefits for one covered person does not obligate the Claims Administrator to make the same or similar determination for any other covered person. In addition, providing alternative benefits for one person is not a waiver of the plan's provisions in accordance with the written plan documents. Deductibles, copays, coinsurance and other limitations and exclusions still apply when alternative benefits are provided. The plan may stop providing alternative benefits when at least one of the following occurs:

- The covered person no longer follows the written treatment plan
- The covered person ceases to be covered under the plan
- The written treatment plan ceases to provide the most efficient and effective use of medical resources under the plan

54. Defendants, their agents, and employees, failed to provide Plaintiff with all rights he is entitled to under the terms of the Plan administered by Defendants, under which he is covered, in violation of ERISA.

55. Defendants, their agents, and employees, failed to make clear to Plaintiff all rights he is entitled to under the terms of the Plan administered by Defendants, under which he is covered in violation of ERISA.

56. Defendants, their agents, and employees, further violated ERISA by interpreting and implementing ERISA plan terms in a way that was systematically arbitrary and capricious, and failed to provide a benefit determination and appeal process that provides for a full and meaningful review of benefit claims and determinations.

57. As a direct and proximate cause of the Defendants' and Defendant's agents' and employees' violations of ERISA, Plaintiff has suffered damages.

58. Plaintiff is entitled to monetary damages and/or restitution from Defendants. In particular, and not by way of limitation, Defendants are liable to Plaintiff for unpaid benefits, interest, attorneys' fees, and other penalties as this Court deems just and proper, under ERISA

§502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B). In addition, Plaintiff seeks counsel fees, costs, prejudgment interest and other appropriate equitable relief, Defendants' violations of ERISA.

**COUNT II –FAILURE TO PROVIDE PLAN DOCUMENTS
IN VIOLATION OF § 502(c) of ERISA; 29 USC § 1132 (c)**

59.  Plaintiff re-adopts and re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

69.    Defendants HCA, Inc. and UHC are liable to Plaintiff for an amount calculated pursuant to ERISA, § 502(c)(1) on a daily basis from the date they should have provided COBRA notice with a copy of the SPD.

60.  Defendants continually refused to provide Plan documents requested by Plaintiff despite the fact that Plaintiff made *multiple requests* for the Plan documents, with the first request made on April 13, 2018; and also provided authorization and an agent designation to release the documents to Maria T. Santi, Esq. and the Health and Medicine Law Firm in July 2018.

61.  The civil enforcement of ERISA, particularly § 502 (c), codified at 29 USC § 1132 (c)(1) states, in relevant part, as follows:

(c)  Administrator's refusal to supply requested information; penalty for failure to provide annual report in complete form.

(1)  Any administrator….(B) who **fails or refuses to comply** with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary **within 30 days after such request** may in the court's discretion be **personally liable to such participant or beneficiary in the amount of up to $ 100 a day from the date of such failure or refusal**, and the court may in its discretion order such other relief as it deems proper. (emphasis added).

62.     HCA and United Healthcare failed to provide Plan documents that Plaintiff is entitled to since it first received notice of the Plan Beneficiary's Request for Plan Documents on or about April 13, 2018. The SPD was not provided until November 2, 2018, two hundred and four (204) days after requested. As such, Defendants are subject to civil penalties of $110 per day, per the SPD, since that date for HCA and United Healthcare's failure and refusal to provide plan documents. As of March 17, 2019, Defendants are liable for approximately $22,440 in civil penalties for HCA's and United Healthcare's refusal to provide plan documents.

63.     Defendants have breached the applicable provisions of ERISA. Wherefore, Plaintiff requests that civil penalties be imposed against Defendants.

## COUNT III – VIOLATION OF FIDUCIARY DUTIES
## UNDER § 502 (a)(3) of ERISA

64.     Plaintiff re-adopts and re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

65.     Defendants, and their agents, and employees acted as fiduciaries to Plaintiff in connection with his group health plan.

66.     The Defendants, their agents and employees, acted as a fiduciary to Plaintiff because Defendants exercised discretionary authority over the management of the Plan and disposition of plan assets; exercised discretionary authority to adjudicate claims; and exercised discretionary authority to make coverage and reimbursement decisions that are final. As such, Defendants and their agents and employees made decisions as fiduciaries.

67.     As fiduciaries of the Plan, Defendants, their agents and employees, owe Plan Beneficiaries, such as Plaintiff, a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that prudent administrators would use in the conduct of an enterprise of like character. ERISA fiduciaries must also ensure that they are acting in

accordance with the documents and instruments governing the Plan and to accord its members an opportunity to obtain a "full and fair review" of any denied or reduced reimbursements, and to make appropriate and non-misleading disclosures to its members.

68.    Defendants, their agents and employees, violated their fiduciary of care by failing to provide a full and fair review of Plaintiff's claims and related appeals. This is evidenced by United Health Care's continuous arbitrary decisions and inconsistencies in approving services, denying services, deciding Medicare pays first and deciding UHC pays first with no real resolution. United Healthcare failed to provide Plaintiff with a *full and fair review* of his claims and failed to consider Mr. Gardi's delicate health conditions.

69.    Defendants, their agents and employees, owe a duty of loyalty to the Plan Beneficiary, as fiduciaries of the Plan under ERISA, to make decisions in the interest of the Plan Beneficiary. Defendants cannot make health benefit determinations for the sole purpose of saving Defendants' money at the expense of the Plan Beneficiary.

70.    Defendants, their agents and employees, violated their fiduciary duty of loyalty to the Plan Beneficiary by denying services for medical treatments that were pre-authorized by Defendants and for medically necessary services.

71.    Defendants misrepresented to the Plaintiff that IGG and Hyperbarics treatment would be covered in its entirety in 2018 and that United Healthcare would make full payment to Plaintiff. Plaintiff relied on the representation made by United Healthcare to his detriment. United Healthcare's actions caused delay, prejudice and expense to Plaintiff's medically necessary treatments and worsening of his medical condition. United Healthcare's actions caused the Plan Beneficiary to incur out of pocket expenses and forced him to have to hire undersigned counsel to represent him.

72.     Defendants violated their fiduciary duties under ERISA § 502 (a)(3), 29 U.S.C. §

1132(a)(3), as such, Plaintiff is entitled to restitution, injunctive and declaratory relief and

Defendant's removal as a breaching fiduciary.

## COUNT IV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73.     This is an action for Intention Inflict of Emotional Distress under the laws of

the State of Florida.

74.     Plaintiff re-adopts and re-alleges and incorporates by reference paragraphs 1

through 43 as if fully set forth herein.

75.     The acts and/or omissions by Defendants, and arbitrary and capricious discretion

described herein constitute extreme and outrageous conduct against the Plaintiff and are beyond

all possible bounds of decency. These acts emotionally crippled and tortured Plaintiff in his state

of physical susceptibility.

76.     Defendants and their agents, intended to cause Plaintiff to suffer emotional

distress or, in the alternative, Defendants and their agents, engaged in conduct with reckless

disregard of the high probability of causing Plaintiff to suffer emotional distress. The Defendant

knew or should have known that such distress would follow.

77.     Defendants and their agents, having possession of all of the Plan Beneficiary's

claim information and medical information related to medically necessary services, *knew* of the

Plan Beneficiary's susceptibilities that made him more likely to experience emotional distress.

Particularly, Defendants and their agents knew that the Plan Beneficiary was disabled, knew he

had just been divorced, and knew he had physical conditions rendering him susceptible to

emotional distress, physically and mentally.

78.     The conduct of Defendants, and their agents and employees, was the direct and proximate cause of the Plan Beneficiary's emotional distress and continuing severe emotional distress evidenced by his weight loss, weakening of body strength and inability to walk and care for himself.

79.     As a direct and proximate result of the conduct of Defendants, their agents and employees, JOSEPH GARDI suffered damages, aggravation of pre-existing conditions, suffered pain therefrom, suffered loss of property, suffered mental pain and suffering, incurred medical and therapy expenses in the treatment of his injuries, worsening of immune deficiency, neurotoxicity, insomnia, anxiety, weight loss, severe emotional distress and his capacity to enjoy life was impaired and he will continue to suffer losses and impairment in the future.

**WHEREFORE**, Plaintiff Joseph Gardi, prays that this Honorable Court will enter judgment against Defendants for

a) Compensatory Damages from the actions caused by Defendants, its agents and employees;

b) Taxable costs and attorney's fees to the Plaintiff;

c) That this Court take jurisdiction of this action and all parties named in this Complaint, and that this Court permit Plaintiff to join in this action by appropriate amended pleading any such additional parties as may be necessary for a full and complete determination of Plaintiff's rights; and

d) Award Plaintiff any such other relief as this Court deems just and proper.

**COUNT V – COBRA, MEDICARE SECONDAY PAYER LAW
AND ERISA VIOLATIONS**

80.     Plaintiff re-adopts and re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

81.     On or about July 2, 2018, Mr. Gardi elected COBRA benefits, as a result of a divorce, to continue medical insurance coverage through the plan he had with his spouse who is currently a working employee of HCA ("the COBRA election").

82.     The COBRA Notice was deficient because Defendant, HCA, Inc. did not provide a copy of the SPD with the Notice to Plaintiff in contravention of ERISA. *See* 29 U.S.C. §§ 1022(a)(1), 1024(b)(1). The summary plan description must contain, *inter alia*, the Plan's requirements respecting eligibility for participation and benefits and circumstances which may result in disqualification, ineligibility, denial or loss of benefits. *Id*. If an employer does not provide a summary plan description, or the summary is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose. *See* 29 U.S.C. §§ 1001(b), 1132(a)(1)(B).

83.     Plaintiff has suffered damages from HCA's failure to disclose the plan documents when he made the COBRA election.

84.     When Plaintiff made the COBRA election he was assured by HCA that all his claims would be paid as they were during the Pre-Cobra period. As such, HCA is estopped from asserting any defenses that would contradict his understanding as he detrimentally relied on the representations when he made the election.

85.     Plaintiff was never apprised of his rights and benefits, yet United Healthcare continues to deny medical benefits under the guise that Medicare is his primary insurance, abusing its discretionary authority under ERISA. UHC has taken the position that Medicare is his primary insurance in violation of COBRA laws and the Medicare Secondary Payer laws.

86.     UHC continues to arbitrarily and unilaterally make the decision to forego properly paying Mr. Gardi's claims, despite the requirement to do so under COBRA, under the guise that Medicare is his primary insurance.

87.     UHC continues to take inconsistent positions regarding whether UHC or whether Medicare pays first which has caused significant delays in medically necessary treatment of the Plan Beneficiary's immune disorder and neurotoxicity causing his health to deteriorate rapidly.

88.     On or about September 25, 2018, during a telephone conference (Ref. No. C4696) Dave C. of UHC informed the Plan Beneficiary's Hyperbarics provider that the Plaintiff had End Stage Renal Failure (ESRD). **The Plan Beneficiary has never had ESRD**. It is unknown why *UHC created this falsity* and/or why this information is in the Plan Beneficiary's records. However, it appears to be an intentional attempt by UHC to kick Plaintiff off its plan despite the fact that this is entirely prohibited by 42 U.S.C. §1395(y)(b)(1).

89.     Thereafter, on or about September 26, 2018, the Plan Beneficiary spoke to UHC which informed him that UHC was his primary insurance.

90.     On or about September 26, 2018, after the Hyperbarics provider could not obtain payment for previously authorized treatment, the Plan Beneficiary and the Provider spoke to supervisor, Paul D. of UHC which informed him that Medicare was his primary insurance.

91.     On or about September 28, 2018 the Plan Beneficiary spoke to Rhonda at UHC (Reference No.C82711731436322) and she stated he had Medicare Part A and Part B. However, the Plan Beneficiary has never had Medicare Part B.

92.     On or about October 10, 2018, the undersigned spoke to Joanne at United Healthcare (Ref # C3799) regarding the Plan Beneficiary's Hyperbarics treatment. She confirmed that UHC was listed as the primary insurance for the Plan Beneficiary, not Medicare

and that this issue was resolved. An that all hyperbaric treatment for the Plan Beneficiary should

be covered until at least 12/9/18. *See* **Exhibit H**. The following day, on or about October 11,

2018, UHC then called the undersigned and informed her that the information provided by

Joanne was incorrect.

93.     On or about October 18, 2018 the Plan Beneficiary had another conference call

with UHC. During that call, UHC stated that HCA was the primary decision maker on all issues

and stated that UHC was the primary payer, that all carriers follow same coordination of

benefits.

94.     United Healthcare has continued its inconsistent decisions to the present day

which continues to have detrimental effects on the Plan Beneficiary's health.

## A.  COBRA LAWS REQUIRE CONTINUATION OF HEALTH INSURANCE COVERAGE IDENTICAL TO COVERAGE PRIOR TO THE COBRA ELECTION MADE BY MR. GARDI

95.     Pursuant to 29 U.S. Code §1161, **"[t]he plan sponsor of each group health**

**plan shall provide…that each qualified beneficiary who would lose coverage under the plan**

**as a result of a qualifying event[4] is entitled, under the plan, to elect, within the election**

**period, continuation coverage under the plan."** (emphasis added).

96.     Here, the qualifying event was triggered due to the legal separation of Mr. Gardi

and his spouse, Lisa Gardi, **not as a result** of him becoming entitled to benefits under title XVIII

of the Social Security Act. Ms. Gardi continues to be a working employee for HCA. As a result,

Mr. Gardi is entitled to benefits in the same manner as he was prior to the qualifying event.

---

[4] For purposes of this part, the term "qualifying event" means, [in relevant part] with respect to any covered employee, any of the following events which, but for the continuation coverage required under this part, would result in the loss of coverage of a qualified beneficiary:
**(3) The divorce or legal separation of the covered employee from the employee's spouse.** (emphasis added).
(4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C. 1395 et seq.].

97.     Pursuant to COBRA 29 U.S. Code § 1162 (1), the term "continuation coverage"

means coverage under the plan which meets the following requirements:

> The coverage must consist of coverage which, as of the time the
> coverage is being provided, is **identical to the coverage provided
> under the plan to similarly situated beneficiaries under the
> plan with respect to whom a qualifying event has not occurred.**
> If coverage is modified under the plan for any group of similarly
> situated beneficiaries, such coverage shall also be modified in the
> same manner for all individuals who are qualified beneficiaries
> under the plan pursuant to this part in connection with such group.
> (emphasis added).

98.     As such, in applying this COBRA provision, Mr. Gardi is entitled to coverage

*identical* to the one he would have, had the qualifying event i.e. the divorce, not occurred.

99.     UHC continues to make arbitrary decisions regarding payment of claims, without

notice to Mr. Gardi, and decided that UHC would not be primary and instead has been electing to

reduce payment and not to pay future medical services in full because of UHC's *arbitrary and

capricious* decision that Medicare should be primary payer. These arbitrary decisions are further

evidenced by the multiple inconsistent statements made by UHC as outlined in the letter dated

October 21, 2018 to UHC. *See* **Composite Exhibit F**.

100.    The Plan Beneficiary continues on a rollercoaster regarding his health at the hands

of UHC.

101.    As a result of the arbitrary and capricious decisions by UHC, Mr. Gardi has

suffered damages, is suffering personal injuries, including severe emotional distress, unpaid

claims, alleged patient responsibility charges, plus additional out of pocket expenses that

continue to accrue weekly. UHC's failure to pay benefits for medically necessary medical

services and care is outrageous.

102.    Mr. Gardi continues to suffer damages and is in **imminent danger of serious decline to his physical and mental health** due the actions of UHC. Mr. Gardi has suffered significant weight loss and dehydration and continues to suffer excess levels of toxicity.

## B. MEDICARE SECONDARY PAYER LAWS DICTATE THAT UHC SHOULD BE PRIMARY HEALTH INSURANCE FOR MR. GARDI, NOT MEDICARE

103.    Medicare Secondary Payer laws dictate that UHC should be primary health insurance for Mr. Gardi, not Medicare.

104.    Counsel for UHC has continually stated otherwise and is of the position that under pg. 49 of the Plan, Medicare pays first. Counsel for UHC references the following language under the Coordination of Benefits:

> *With coordination of benefits, the primary plan pays your benefits first. Then the secondary plan considers any additional benefit that may be due. The following guidelines are used to determine which plan is primary:*
>
> *… "Medicare is always the primary plan for COBRA participants…"*

105.    The Plan Beneficiary only had Medicare Part A and *has never had or enrolled in Medicare Part B* because Medicare does not adequately cover his treatments. At the time of the COBRA election, UHC was primary. He was also not provided a copy of the SPD, as such, UHC cannot now take a different position that it is not primary.

106.    Pursuant to 42 U.S.C.S. § 1395y(b)(3)(A)(ii) the government has a statutory right of action to recover Medicare payments from an entity which would be responsible for payment under an employer group health plan. **The corresponding regulations require Medicare to be a secondary payer under an employer group health plan even if the plan's terms provide otherwise**. *See United States v. Blue Cross Blue Shield*, 859 F. Supp. 283 (E.D. Mich. 1994); *See also Brooks v. Blue Cross/Blue Shield of Florida, Inc.*, 1995 U.S. Dist. LEXIS 22124, 9 Fla. L. Weekly Fed. D 311 (S.D. Fla. 1995) (emphasis added).

107.    The Courts in the preceding cases specifically construed 42 U.S.C.S. 1395(y)(b)(1)(A) for the working aged, however, 42 U.S.C.S. 1395(y)(b)(1)(B) parallels the same concept in that it states:

> A large group health plan (as defined in clause (iii)) **may not take into account that an individual (or a member of the individual's family) who is covered under the plan by virtue of the individual's current employment status** with an employer is entitled to benefits under this subchapter under section 426(b)[5] of this title.

108.    Prior to June 14, 2018, the coverage Mr. Gardi had was through HCA as a spouse wherein the group plan was primary. **The intent of COBRA continuation rules is to assure that there are no gaps in the individual's health coverage**. *National Cos. Health Ben. Plan v. St. Joseph's Hosp.*, Inc. (1991 CA11 Ga). UHC's arbitrary actions are contrary to the legislature's intent. These actions continue to cause prejudice and delay to the Member and has put him at severe risk of injury and detrimental health effects. Specifically, the following has occurred as a result of UHC's arbitrary actions in making the erroneous determination that Medicare is the primary payer:

a) NAC treatment was withheld by Diplomat Pharmacy although pre-authorized by UHC;

b) IGG treatment was withheld by Diplomat Pharmacy although pre-authorized by UHC;

c) Hyperbarics treatment delays continue although previously pre-authorized by UHC;

d) IV treatment delays for Vitamins and minerals are being delayed although it is a medically necessary treatment to ensure Mr. Gardi remains alive;

e) Mr. Gardi has incurred and continues to incur medical debt for amounts that should have been covered by UHC;

f) Mr. Gardi's medical conditions continue to worsen as a result of UHC's unlawful actions.

---

[5] 426(b) refers to individuals that have not attained the age of 65 such as Mr. Gardi and are entitled to Medicare under applicable disability criteria.

109.    United Healthcare has failed to comply with ERISA, COBRA laws and the Medicare Secondary Payer Act. *See* 42 U.S.C.S. § 1395y(b)(3)(A). As a result of these violations, the Plan Beneficiary is entitled to **double damages** for UHC's failure to provide for primary payment or appropriate reimbursement to Mr. Gardi.

110.    UHC is also be subject to penalties for its intentional attempts to direct Mr. Gardi to opt out of the employer group health plan and force him into Medicare. *See* 42 U.S.C.S. § 1395y(b)(3)(C) and its intentional attempt to force him to have Medicare as his primary health insurance.

**WHEREFORE**, Plaintiff Joseph Gardi, prays that this Honorable Court will enter judgment against Defendant, UHC for

a.  Double compensatory damages from the unlawful actions taken by Defendant UHC, its agents and employees;

b.  Taxable costs and attorney's fees to the Plaintiff;

c.  That this Court take jurisdiction of this action and all parties named in this Complaint, and that this Court permit Plaintiff to join in this action by appropriate amended pleading any such additional parties as may be necessary for a full and complete determination of Plaintiff's rights; and

d.  Award Plaintiff any such other relief as this Court deems just and proper.

## COUNT VI – COBRA VIOLATION BY DEFENDANTS

111.    Plaintiff re-adopts and re-alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

112.    UHC violated COBRA by requiring evidence of insurability when it withheld IGG treatment and medications.

113.    COBRA 29 U.S. Code § 1162(4) states that there is no requirement of insurability, meaning the coverage may not be conditioned upon, or discriminate on the basis of lack of, evidence of insurability.

114.    UHC violated this provision twice, in July 2018 when they refused to authorize IGG treatment, and again, on November 1, 2018, when UHC informed CVS Caremark that Mr. Gardi would be required to submit himself to additional blood tests and qualifications to obtain necessary an already approved IGG treatment, despite the fact that the IGG had been previously authorized from July 18, 2018 through October 14, 2018, Authorization No. A050314270 and again from October 15, 2018, through April 15, 2019, Authorization No. A0555041384.

115.    UHC's unlawful actions caused delays in treatment to the Plan Beneficiary and Mr. Gardi has suffered damages, is suffering personal injuries, including severe emotional distress, unpaid claims, alleged patient responsibility charges, plus additional out of pocket expenses that continue to accrue weekly.

116.    Mr. Gardi continues to suffer damages and is in **imminent danger of serious decline to his physical and mental health** due the actions of UHC. Mr. Gardi has suffered (i) significant weight loss (ii) dehydration (iii) continues to suffer excess levels of toxicity (iv) has trouble performing Activities of Daily Living without assistance (v) is unable to drive or stand for long periods and (vi) and has suffered a significant decline in his overall physical and mental health.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, JOSEPH GARDI, prays that this Honorable Court will enter judgment against Defendants, UNITED HEALTHCARE SERVICES, INC., and HCA INC, as follows:

a.  Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in further violations of COBRA, ERISA and the Medicare Secondary Payer Law;

b.  Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons in active concert or participation with it, from further delays and claim denial of Vitamins and Minerals Infusions, IGG treatment and Hyperbarics treatment;

c.  For monetary damages and civil penalties;

d.  For reasonable attorney's fees and costs of suit;

e.  For all damages allowed under COBRA, ERISA and the Medicare Secondary Payer Law;

f.  Declaring that United Healthcare has breached the terms of the HCA Plan;

g.  Declaring that United Healthcare has breached its fiduciary duties under ERISA;

h.  Declaring that HCA, Inc. has breached its fiduciary duties under ERISA;

i.  Awarding pre-judgment and post-judgment interest; and

j.  For such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated this 17th day of March, 2019.

**HEALTH AND MEDICINE LAW FIRM**
*Counsel for Plaintiff*
2525 Ponce De Leon Blvd., Suite 300
Coral Gables, FL 33134
Phone: (305) 200-8747
Fax: (305) 200-8701
Service email:
admin@healthandmedicinelawfirm.com
Attorney email:
msanti@healthandmedicinelawfirm.com

By:     **/s/ Maria T. Santi**
        MARIA T. SANTI, ESQUIRE
        Florida Bar No.:  117564