UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80369-CIV-MARRA

JOSEPH GARDI

  Plaintiff,

v.

UNITED HEALTHCARE SERVICES, INC. and
HCA INC.

  Defendants.

_____/

## OPINION AND ORDER

  This Cause is before the Court upon Defendant United Healthcare Services, Inc.'s ("United") Motion to Dismiss Counts II through VI of Plaintiff's Complaint (DE 13); Defendant HCA Inc.'s ("HCA") Motion to Dismiss Plaintiff's Complaint (DE 15); United's Motion to Strike Ryan N. Chae Affidavit and All References to It (DE 20); and HCA's Motion to Strike Ryan N. Chae Affidavit and All References to It (DE 21). Plaintiff Joseph Gardi ("Plaintiff") has filed responses in opposition to the above motions: Response in Opposition to HCA's Motion to Dismiss (DE 18), which attached the Affidavit of Ryan N. Chae ("Chae Affidavit") (DE 18-1); Response in Opposition to United's Motion to Dismiss (DE 19) which attached the Chae Affidavit (DE 19-1); and Plaintiff's Combined Response to Defendants' Motion to Strike (DE 25). Defendants filed replies in support of their motions. (DE 23, 24, 25, 26).

  The Court has considered the motions and is otherwise fully advised in the premises.

## I. BACKGROUND

  Plaintiff Joseph Gardi, the Insurance Plan Beneficiary, files the instant action against United and HCA alleging violations of: 1) Consolidated Omnibus Budget Reconciliation Act of

1986, 29 U.S.C. § 1161 *et seq.* ("COBRA"); 2) the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"); and 3) Medicare Secondary Payer laws, 42 U.S.C. § 1395y(b).  (DE 1 at 1).  Plaintiff is suing for damages, attorney's fees and costs, and other relief. (*Id.*).  Plaintiff's Complaint is comprised of six counts:

    i.    Count I against both Defendants: Violation of § 502(a) of ERISA;

    ii.    Count II against both Defendants: Failure to Provide Plan Documents in Violation of § 502(c) of ERISA;

    iii.    Count III against both Defendants: Violation of Fiduciary Duties under § 502(a)(3) of ERISA;

    iv.    Count IV against both Defendants: Intentional Infliction of Emotional Distress;

    v.    Count V against both Defendants: COBRA, Medicare Secondary Payer Act ("MSP Act"), and ERISA Violations;

    vi.    Count VI against United[1]: COBRA Violation;

(*Id.* at ¶¶ 44-58, 59-63, 64-72, 73-79; 80-110, 111-16).

Plaintiff alleges that at all material times he was covered by the health insurance plan sponsored and self-funded by his ex-wife's employer, HCA, Inc.  (DE 1 at ¶ 11).  The Complaint alleges the plan, HCA Health and Welfare Benefits Plan (the "Plan"), had Defendant United Healthcare as the claims administrator.  (*Id.*).  United, according to the Complaint, is and was a health insurance company authorized to provide health insurance coverage and to administer health benefits and related services.  (*Id.* at ¶ 4).

As a result of Plaintiff's divorce, Plaintiff's coverage under the Plan ended on June 13, 2018 ("pre-Cobra period").  (*Id.* at ¶ 12).  Plaintiff was granted Medicare Part A due to his

---

[1] It is disputed whether Count VI makes allegations against HCA.  This issue is discussed further below.

disability on approximately July 1, 2016. (*Id.* at ¶ 13). Plaintiff alleges, however, that he did not utilize Medicare Part A, he has never had Medicare Part B, and at all times material, he alleges his primary health insurance plan was the HCA Health and Welfare Benefits Plan. (*Id.*). Plaintiff alleges UHC always paid his claims without issue during the Pre-Cobra Period. (*Id.*). Following the divorce, Plaintiff elected through COBRA to continue receiving medical benefits through the Plan. (*Id.* at ¶ 14). This COBRA coverage became effective on June 14, 2018 ("post-Cobra period"). (*Id.*).

The Complaint states "[a]s for Plan and claim administration, the extent of each Defendant's involvement is not entirely clear at this juncture, but each Defendant was involved, in whole or in part." (*Id.* at ¶ 18).

The Complaint outlines three medically necessary treatments that Plaintiff alleges were impacted by Defendants' actions: 1) vitamins and minerals infusions; 2) Octagam Immunoglobulin G (IGG) IV treatment; and 3) hyperbarics treatment. (*Id.* at ¶¶ 19-23, 24-35, 36-43). Plaintiff alleges that treatments were arbitrarily denied, which either forced him to forego treatments or required him to proceed with the treatments and pay out of pocket following delays. (*Id.*). Plaintiff further alleges that Defendants failed to provide copies of the Summary Plan Description ("SPD") despite Plaintiff's repeated requests. (*Id.*). The Court will address the Complaints factual allegations in greater detail as necessary below.

## II.    LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Wilborn v. Jones*, 761 F. App'x 908, 910 (11th Cir. 2019) (quoting Fed. R. Civ. P. 8(a)(2)). When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "This rule does not 'impose a probability requirement at the pleading stage.' Instead, the standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly,* 550 U.S. at 556).

## III.    DISCUSSION

### A.  <u>**MOTIONS TO STRIKE:**</u>

The identical Chae Affidavit was attached to Plaintiff's Responses in Opposition to the Defendants' Motions to Dismiss. (DE 18-1; 19-1). Defendants move to strike the Chae Affidavit as procedurally improper on a Motion to Dismiss because it invites the Court to consider facts beyond those alleged on the face of the Complaint and the documents attached thereto. (DE 20; DE 21).

Plaintiff responds that the Chae Affidavit refers to allegations made in Plaintiff's Complaint. (DE 25). Plaintiff urges the Court to consider the Affidavit an exception to the rule that Courts are constrained to the four-corners of the complaint because the document is: central to its claim; the contents are not in dispute; and the document is attached to the response to a motion to dismiss. (*Id.* at 5-6). Additionally, Plaintiff urges the Court to impose sanctions—

including attorneys' fees—on Defendants for failing to make a reasonable or meaningful attempt to confer prior to filing the Motions to Strike. (*Id.* at 2-3).

1. Motion to Strike—Applicable Law:

The Eleventh Circuit has held "[o]rdinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). The court however, has "recognize[d] an exception, . . . in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id.* (citing *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir. 1999); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1368–69 (11th Cir. 1997)).

i. **Incorporated in the Complaint:**

Plaintiff argues that the Motion to Strike should be denied because "[t]he Affidavit attached to Plaintiff's Responses to the Motions to Dismiss clarifies allegations already made in Plaintiff's Complaint and simply provides details related to these allegations." (DE 25 at 3). Plaintiff contends "paragraph 22 specifically incorporates the written request made by Ryan Chae to obtain a copy of the policy and/or SPD." (*Id.*).

However, Plaintiff's Complaint does not explicitly make reference to Mr. Chae's Affidavit. Paragraph 22 of the Complaint states:

On or about April 13, 2018, and as a result of issuance of the Denial Letter, counsel for the Plan Beneficiary requested a copy of the Summary Plan Description ("SPD"). *See* **Exhibit C**. The SPD was thereafter requested multiple times by phone from United Healthcare and HCA. Both defendants failed to provide a copy of the SPD to the Plan Beneficiary. It was not until the undersigned submitted a request for documents and after multiple calls, that HCA provided the SPD on approximately September 25, 2018. Nevertheless, the copy provided was incomplete and only pages 1 through 148 were provided. *See* **Exhibit D**. The full

complete copy was finally provided on or about November 2, 2018, by United Healthcare's legal counsel.

(DE 1 at 5-6) (emphasis in original).

In the context of a motion to strike documents attached in opposition to a motion to dismiss, the Complaint's vague allusions to efforts by Plaintiff's counsel contacting United and HCA do not constitute a reference to documents. *See Brooks*, 116 F.3d at 1369 ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment.").

However, even if paragraph 22 did sufficiently refer to the Chae Affidavit, the Court would still have to find the document to be central to the claim for it to survive the motion to strike.

### ii.    Central to the claim:

The Court concludes that the Chae Affidavit is not central to the claim so as to qualify as an exception to the general rule that the Court is limited to the Complaint and the attached documents when considering a motion to dismiss.

Defendants argue the issue presented is analogous to what was before the court in *Glass v. City of Glencoe*: "[i]t is true that, although a court faced with a Rule 12(b)(6) motion is generally restricted to reviewing the four corners of the complaint, it may also consider documents that are both 'central' to the plaintiff's claim and undisputedly authentic." *Glass v. City of Glencoe*, 2017 WL 1407477, at *3 (N.D. Ala. Apr. 20, 2017). The court continued "[b]ut the difficulty with Plaintiff's theory is that, in this context, a document is typically 'central' to a claim only if it is a written instrument attached to or referenced in the complaint and itself gives rise, or is otherwise intrinsic, to the claim, such as an insurance policy or other contract or a promissory note; **it does**

**not encompass witness affidavits that merely recount circumstances or information relevant to a claim**." *Id.* (emphasis added). "If it were otherwise, almost all evidence would be 'central' to a claim, and the distinction between motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56 would be eviscerated." *Id.*

Additionally, the court in *Glass* took note of the fact that the "affidavits are not referenced in the complaint; indeed, they were not created until after Defendants filed their pending motions to dismiss." *Id.* at *4. Similarly, the Chae Affidavit was drafted May 8, 2019, following the filings of the Motions to Dismiss on April 24, 2019. (DE 18-1; DE 19-1, DE 13, DE 15).

Plaintiff argues several Eleventh Circuit cases have permitted looking beyond the Complaint, but Defendants properly underscore the differences from those cases. Namely, in a footnote in *Harris v. Ivax Corp.*, the court remarked:

> Ordinarily, the full text of such a release would not be part of the record under review for a dismissal under Fed.R.Civ.P. 12(b)(6) unless it was attached to the complaint. *See* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990). **But a document central to the complaint that the <u>defense appends</u> to its motion to dismiss is also properly considered, provided that its contents are not in dispute**. *See, e.g., Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997). The PSLRA, moreover, contains a provision that directs the district court to consider not only "any statement cited in the complaint" but also "any cautionary statement accompanying the forward-looking statement, which are [*sic* ] not subject to material dispute, cited by the defendant." PSLRA § 102(b), *codified at* 15 U.S.C. § 78u–5(e). **The usual rules for considering 12(b)(6) motions are thus bent to permit consideration of an allegedly fraudulent statement in its context**.

*Harris*, 182 F.3d at 802 n.2. (emphasis added).

Critically, the document is not proffered by the Defense, but instead is filed by Plaintiff, who may not avail himself of the doctrine. *Cf. Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 n.16 (11th Cir. 1999) ("the rationale is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and

therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment."); *see also Merl v. Warner Bros. Entm't Inc.*, 2013 WL 266049, at *6 (S.D. Fla. Jan. 23, 2013) ("Plaintiffs 'cannot amend the Complaint in [a] brief in opposition to a motion to dismiss.'") (citation omitted).

Accordingly, the Court will abide by the general rule that "we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc.*, 500 F.3d at 1284. The Motions to Strike are granted.

## B. <u>MOTIONS TO DISMISS:</u>

### 1. <u>Count I:</u>

Count I alleges violations of § 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B) against both Defendants. (DE 1 at 11-14). Only HCA moves to dismiss Count I. (DE 15 at pdf 5-7; DE 13 at 1).

HCA argues Count I, which it frames as alleging that "HCA wrongfully interpreted the Plan's coordination of benefits provision and wrongfully denied benefits for various services and treatments in direct contravention of Plan terms," should be dismissed because it is not a plan administrator, but merely a plan sponsor, and therefore is not a proper defendant for this cause of action. (DE 15 at pdf 5).

Plaintiff responds that HCA misstates the 502(a) claim alleged. Plaintiff argues "HCA fails to assert that Plaintiff also seeks relief for HCA's failure to make consistent payment of benefits to Plaintiff, failure to clarify Plaintiff's rights under the plan and failure to provide Plaintiff with all rights he is entitled to under the terms of the Plan, including the appointment of a case management coordinator, and its failure to provide a benefit determination and appeal process that

provides for a full and meaningful review." (DE 18 at 2). Plaintiff insists "§502(a) of ERISA entitles him to a right to seek clarification of rights to benefits under the terms of the Plan administered by HCA, their agents, and employees under which the Plan Beneficiary is covered." *Id.*

a. **Plan Administrator**

"The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). Section 502(a) of ERISA provides:

(a) Persons empowered to bring a civil action
A civil action may be brought—
    (1) by a participant or beneficiary—
        (A) for the relief provided for in subsection (c) of this section, or
        (B) to recover benefits due to him under the terms of his plan, to
        enforce his rights under the terms of the plan, or to clarify his rights
        to future benefits under the terms of the plan;

29 U.S.C. § 1132. "In the Eleventh Circuit, this section confers a right to sue the plan administrator for recovery of benefits." *Hamilton v. Allen-Bradley Co.*, 244 F.3d 819, 824 (11th Cir. 2001) (citing *Rosen v. TRW, Inc.,* 979 F.2d 191, 193–94 (11th Cir. 1992)).

The Plan, attached to Plaintiff's Complaint and therefore can be considered on a Motion to Dismiss, states "[t]he HCA Plan Administration Committee is the Plan Administrator for the HCA 401(k) Plan and the HCA Health and Welfare Benefits Plan." (DE 4-1 at pdf 168).

The *de facto* administrator doctrine provides that an employer may be held liable as the plan administrator in certain circumstances; "[p]roof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the

plan document." *Hamilton*, 244 F.3d at 824. "[I]f the employer is administering the plan, then it can be held liable for ERISA violations." *Id.*

The Eleventh Circuit adopted the First Circuit's approach to *de facto* administrators where the plaintiff sued his former employer for failing to provide information about plan benefits as required by § 1132(c) of ERISA:

> the court recognized that § 1002(16)(A)(i) provides that the plan administrator is the person designated in the plan documents. But the court noted that ERISA also confers on plan participants the right to have timely information about their benefits. The court reasoned that when a company holds itself out as the administrator, then it should be subject to liability "should it fail to discharge that role in a proper way."

*Rosen v. TRW, Inc.*, 979 F.2d 191, 193 (11th Cir. 1992) (quoting *Law v. Ernst & Young*, 956 F.2d 364, 373 (1st Cir. 1992)).

While determining who is the true plan administrator can be fact intensive, a complaint must allege facts upon which the Court may infer that the employer is the proper defendant. The Eleventh Circuit distinguished a Northern District of Georgia case where a court held that an employer was not the proper party with an instance where the *de facto* administrator doctrine was correctly applied; "[plaintiff], in his amended complaint, alleged that the Administrative Committee is 'an unincorporated, unfunded, unidentified, inactive entity, which is the alter ego of Chilton.'" *Id.* (internal citation omitted). The court explained "[b]efore reaching the statutory requirements of ERISA, the *Boyer* court noted that minutes of the company's board meetings proved that the committee named by the plan agreement was 'a viable, operating entity which, together with the trustee bank, was wholly responsible for administrating the profit sharing plan.' The court also found no evidence that the company controlled the plan or its administration." *Id.* (quoting *Boyer v. J. A. Majors Co. Emp. Profit Sharing Plan*, 481 F. Supp. 454, 458 (N.D. Ga. 1979)).

In this case, however, the Complaint does not invoke the *de facto* administrator doctrine, nor does it allege any facts upon which the Court can infer that the HCA Plan Administration Committee is an alter ego for HCA. *Cf. Rosen*, 979 F.2d at 194 ("The amended complaint also added the claims that the company was the alter ego of the committee and the committee was an inactive, unfunded entity."). The Complaint never even clearly alleges HCA is the Plan Administrator. It first alleges "[a]t all times material hereto, the Defendant United Healthcare was a **plan** and claims **administrator** for HCA," and then subsequently states "[a]s for Plan and claim administration, the extent of each Defendant's involvement is not entirely clear at this juncture, but each Defendant was involved, in whole or in part." (DE 1 at ¶¶ 6, 18) (emphasis added).

The closest Plaintiff comes to alleging the *de facto* administrator doctrine is in his Response to HCA's Motion to Dismiss. Plaintiff asserts the addresses of the HCA Plan Administration Committee and HCA are identical and therefore reveal that there is no meaningful difference between the two. (DE 18 at 2-3; DE 4-1 at pdf 168). This alone is insufficient to invoke the *de facto* administrator doctrine.

The Court concludes that Count I fails to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" against HCA. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court notes that Count I may proceed against United as it plausibly states a claim for relief, and United does not contest Count I.

2. Count II:

Plaintiff alleges HCA and United are liable to Plaintiff for an amount calculated pursuant to ERISA, § 502(c)(1) on a daily basis from the date they should have provided COBRA notice with a copy of the Summary Plan Description ("SPD"). (DE 1 at ¶¶ 59-60).

United argues that the Court should dismiss Count II because United is not a proper Defendant to a claim for penalties under § 502(c)(1). (DE 13 at 3). United argues the Plan Administrator is the HCA Plan Committee, and therefore this claim should be dismissed as to United, which it contends is only a claims administrator and therefore not subject to penalties. (*Id.*).

HCA reiterates its position that it cannot be liable under ERISA as it is not the Plan Administrator. (DE 15 at pdf 6). HCA similarly moves for dismissal on the grounds that Plaintiff fails to allege a claim upon which relief may be granted because there were no written requests directed to the plan administrator. (*Id.*). HCA acknowledges that Plaintiff alleges making requests to HCA, but that the only written requests Plaintiff alleges are letters addressed to United and BConnected. (*Id.*).

1. **Requirements of § 502(c)**

"ERISA requires a plan administrator to furnish the following upon written request from a plan participant: 'the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.' District courts are vested with discretion to award a daily statutory penalty if a plan administrator either refuses or fails to comply with a written request within thirty days.'" *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1270 (11th Cir. 2008) (quoting 29 U.S.C. § 1024(b)(4); citing 29 U.S.C. § 1132(c)(1)).

i. Proper Defendant:

The Court adopts its Plan Administrator analysis from Count I and finds that HCA is not the plan administrator. Therefore, it is not a proper defendant to this ERISA claim under the facts currently alleged by Plaintiff.

The Court further finds that as the Claims Administrator, United is not a proper defendant to an ERISA § 502(c) claim. Additionally, as a third-party administrator, United cannot be held liable under the *de facto* administrator doctrine, even if Plaintiff had espoused that theory.

The Eleventh Circuit has held "the district court correctly concluded that [defendant], a third-party claims administrator, was not the plan administrator and therefore not subject to statutory penalties under § 1132(c)(1)." *Smiley v. Hartford Life & Acc. Ins. Co.*, 610 F. App'x 8 (11th Cir. 2015). The court has "consistently rejected the use of the *de facto* plan administrator doctrine 'where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer....'" *Id.* (quoting *Oliver*, 497 F.3d at 1194 (11th Cir. 2007)).

    ii.   <u>Written Request:</u>

Additionally, as for the requirement that requests for the SPD be written, 29 U.S.C. § 1024(b)(4) provides:

> (4) The administrator shall, **upon <u>written</u> request of any participant** or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. The administrator may make a reasonable charge to cover the cost of furnishing such complete copies. The Secretary may by regulation prescribe the maximum amount which will constitute a reasonable charge under the preceding sentence.

29 U.S.C. § 1024(b)(4) (emphasis added). Courts have interpreted § 1024(b)(1) and 29 U.S.C. § 1132(c)(1) as requiring the requests to be written. *See Fox v. Blue Cross & Blue Shield of Fla., Inc.*, 2012 WL 12892764, at *2 (S.D. Fla. Mar. 22, 2012), *aff'd*, 517 F. App'x 754 (11th Cir. 2013) ("29 U.S.C. § 1132(c)(1) vests district courts with the discretion to award a daily statutory penalty if the plan administrator either refuses or fails to comply with a written request within thirty days.")

Plaintiff alleges that "HCA and United Healthcare failed to provide Plan documents that Plaintiff is entitled to since it first received notice of the Plan Beneficiary's Request for Plan

Documents on or about April 13, 2018. The SPD was not provided until November 2, 2018, two hundred and four (204) days after requested. As such, Defendants are subject to civil penalties of $110 per day, per the SPD, since that date for HCA and United Healthcare's failure and refusal to provide plan documents." (DE 1 at ¶ 62).

Attached to the Complaint are two letters: one dated April 13, 2018 addressed to United Healthcare and one dated October 21, 2018 addressed to BConnected.  (DE 4-3 pdf 184-186; DE 4-4 pdf 188-90).  As United is a third-party administrator that cannot be held liable under § 1132(c), the first letter does not trigger the statutory penalty.

The October 21 letter acknowledges partial receipt of the SPD and was sent to BConnected, which is defined as "HCA's benefits information system that allows you to access automated information about your benefits through the Web site or interactive voice response system, or to speak to a Benefits Center Representative."  (DE 4-1 pdf 174).  The Plan also explains:

> The Plan Administration Committee uses the help of many persons and organizations, including BConnected, in administering the plans. If you have questions about these Plans, you can visit HCArewards.com or call BConnected at 1-800-566-4114.

> If BConnected cannot answer your question, you should contact:
> HCA Inc.
> Plan Administration Committee
> c/o Human Resources Department
> One Park Plaza, I-2W
> Nashville, TN 37203

(DE 4-1 pdf 169).

Plaintiff argues this shows BConnected is a system within HCA and because "[i]t was Defendant United Healthcare that ultimately provided a full copy of the SPD on November 2, 2018, not HCA" that "HCA is still in violation of this provision."  (DE 18 at 7-8).  However, as discussed previously, Plaintiff's Complaint does not sufficiently allege that HCA, not the HCA

Plan Administration Committee, is the Plan Administrator. Moreover, the Complaint never even mentions BConnected and therefore fails to survive HCA's Motion to Dismiss. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level").

Accordingly, the Court grants HCA and United's motions to dismiss Count II.

3. Count III:

Count III alleges violations of fiduciary duties under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). (DE 1 at ¶¶ 64-72).

HCA argues it is not a fiduciary under the Plan; HCA insists it is not a named fiduciary in the Plan nor has discretionary authority been delegated to HCA. (DE 15 at pdf 7). HCA additionally argues that it is improperly duplicative of Plaintiff's Count I. (*Id.* at pdf 8-9).

United similarly argues that § 502(a)(3) provides no relief for injuries for which ERISA provides another remedy. Thus, because ERISA provides a remedy for the wrongful denial of benefits in 29 U.S.C. § 502(a)(1)(B), Plaintiff is prohibited from pursuing Count III in addition to Count I. (DE 13 at 4-6). United contends Plaintiff's alleged harms are not distinct from, but are intertwined with his denial-of-benefits claim, which cannot be asserted under section 502(a)(3). (*Id.* at 6-7). Finally, United notes that the "appropriate remedy for the violation of ERISA's procedural requirements is not an award of damages or other substantive relief, but remand to the plan administrator for a full and fair review—a remedy that Plaintiff does not seek." (*Id.* at 7-9).

A. **Fiduciaries Under ERISA**

"ERISA provides that a person can become a fiduciary in one of two ways: 1) Being a 'named fiduciary' in the Plan instrument . . . ; or 2) exercising discretionary control over the Plan or the management of its assets, rendering investment advice for a fee, or having any discretionary

authority or responsibility over Plan administration." *Bacon v. Stiefel Labs., Inc.*, 677 F. Supp. 2d 1331, 1340–41 (S.D. Fla. 2010) (quoting 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(21)(A)).

Specifically, ERISA states:

(1) Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall **provide for one or more named fiduciaries** who jointly or severally shall have authority to control and manage the operation and administration of the plan.
 (2) For purposes of this subchapter, the term ''named fiduciary'' means a fiduciary who is **named in the plan instrument**, or who, pursuant to a procedure specified in the plan, is **identified as a fiduciary** (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

29 U.S.C. § 1102(a)(1)-(2) (emphasis added).  As for the second category of fiduciary, 29 U.S.C. § 1002(21)(A) provides:

**(21)(A)** Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he **exercises any discretionary authority** or **discretionary control respecting management of such plan** or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any **discretionary authority or discretionary responsibility in the administration of such plan**. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A) (emphasis added).

The Eleventh Circuit has explained "a party is a fiduciary only 'to the extent' that it performs a fiduciary function. As such, fiduciary status under ERISA is not an 'all-or-nothing concept,' and "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005).  "The question whether a party is an ERISA fiduciary is a mixed question of law and fact." *Id.*

The Complaint never alleges that HCA or United are the <u>named fiduciaries</u> of the Plan.

Instead, Plaintiff alleges, for example that:

> The Defendants, their agents and employees, acted as a fiduciary to Plaintiff because Defendants exercised discretionary authority over the management of the Plan and disposition of plan assets; exercised discretionary authority to adjudicate claims; and exercised discretionary authority to make coverage and reimbursement decisions that are final. As such, Defendants and their agents and employees made decisions as fiduciaries.

(DE 1 at ¶ 66).  In contrast to HCA, United does not contest its status as a fiduciary.

The Plan lists the Plan Administration Committee as the named fiduciary: "[t]he Plan's fiduciary, the Plan Administration Committee, oversees the Plan's asset managers and ensures that expenses paid to them are reasonable."  (DE 4-1 pdf 129).  However, it then provides:

> The **Plan Administrator may delegate any of its duties and responsibilities to one or more persons or entities**. Such delegation of authority must be in writing, and must identify the delegate and the scope of the delegated responsibilities.

> For the insured benefit options under the HCA Health and Welfare Benefits Plan, the Plan Administrator has **<u>delegated its fiduciary duties </u>to interpret the insurance contracts and to make all interpretive and factual determinations as to whether any individual is entitled to receive any benefits under the terms of the insurance contract**. These delegates have the full extent of the Plan Administrator's authority and duties with respect to those responsibilities delegated to them.

> For the self-funded benefit options under the HCA Health and Welfare Benefits Plan, the Plan Administrator has **delegated its fiduciary duties with respect to certain initial claim determinations, and in some cases, final claims determinations, to the applicable <u>Claims Administrator</u>.** These delegates have the full extent of the Plan Administrator's authority and duties with respect to those responsibilities delegated to them.

(DE 4-1 pdf 169) (emphasis added).

The Eleventh Circuit held that an insurance company was not a fiduciary under ERISA where "the amended complaint simply recites portions of the statutory definition." *Cotton*, 402 F.3d at 1277.  The court elaborated:

> Simple allegations that Mass Mutual falls within the statutory definition of fiduciary, however, are not well-pleaded factual allegations sufficient to establish liability in the wake of an entry of default. Indeed, because the plaintiffs do not otherwise explain from whence this discretion came or how specifically Mass Mutual "administered, managed, and controlled" the plan, their allegations are really no more than a conclusory assertion that Mass Mutual is an ERISA fiduciary. Thus, the plaintiffs' "well-pleaded factual allegations" regarding Mass Mutual's fiduciary status are not well-pleaded factual allegations at all; rather, they are merely the plaintiffs' own conclusions of law, which Mass Mutual is not deemed to have admitted as a result of default.

*Id.* at 1278.

In a case more analogous to the instant's procedural posture, a court for this district applied the *Cotton* holdings in granting a motion to dismiss. *Bacon v. Stiefel Labs., Inc.*, 677 F. Supp. 2d 1331 (S.D. Fla. 2010). The Court first highlighted that "Plaintiffs have not alleged that the Company is a named fiduciary of the Plan." *Id.* 1341. The Court next noted there was only a single allegation in the complaint pertaining to discretionary authority "which states that the Company was a fiduciary 'because [it] had, without limitation, the authority to name and retain the Employee Plan's Trustee, the Committee and Plan Administrator, and [it] exercised discretion, authority or discretionary control respecting the management, administration or disposition of assets of the Employee Plan.'" *Id.* The Court concluded "[b]ecause Plaintiffs allege no other facts in this regard, this issue is squarely controlled by the Eleventh Circuit's decision in *Cotton*." *Id.* The Court found that the complaint "merely tracks the statutory language defining an ERISA fiduciary, but provides no facts to support the conclusory allegations," and therefore "fails to properly allege that the Company is an ERISA fiduciary of the Plan." *Id.*

The Court similarly finds that HCA is an improper Defendant to a § 502(a)(3) cause of action because it is not a named fiduciary—the HCA Plan Administration Committee is—and the Complaint "merely tracks the statutory language defining an ERISA fiduciary, but provides no facts to support the conclusory allegations." *Id.* Accordingly, Count III is dismissed without

prejudice as to HCA and the Court need not address HCA's additional grounds for Count III's dismissal.

In contrast, the Court finds that the Complaint and the attachments to the Complaint plausibly allege that United is a fiduciary. (DE 4-1 pdf 169). The Court will consider United's arguments in turn.

B. **Denial of Benefits Under 502(a)(3)**

United argues that § 502(a)(3) is a catchall provision that is only available to a plaintiff who cannot find relief under another ERISA provision. United points to the Supreme Court's holding in *Varity* for this proposition:

> Four of that section's six subsections focus upon specific areas, *i.e.,* the first (wrongful denial of benefits and information), the second (fiduciary obligations related to the plan's financial integrity), the fourth (tax registration), and the sixth (civil penalties). The language of the other two subsections, the third and the fifth, creates two "catchalls," providing "appropriate equitable relief" for "any" statutory violation. **This structure suggests that these "catchall" provisions act as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy.** And, contrary to Varity's argument, there is nothing in the legislative history that conflicts with this interpretation.

*Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (emphasis added).

The Eleventh Circuit has interpreted *Varity* to mean that "an ERISA plaintiff with an adequate remedy under § 1132(a)(1)(B), cannot alternatively plead and proceed under § 1132(a)(3)." *Katz v. Comprehensive Plan Of Grp. Ins.*, 197 F.3d 1084, 1088 (11th Cir. 1999) (approving of the district court's interpretation of *Varity*, 516 U.S. at 513-14 in *Katz v. ALLTEL Corp.*, 985 F. Supp. 1157, 1160 (N.D. Ga. 1997)). The Eleventh Circuit affirmed the district court's limiting plaintiff to her section (a)(1) claim on the following grounds: "(1) that Congress had provided adequate relief for [plaintiff's] alleged injury elsewhere; and (2) that section (a)(3) was merely meant to be a 'catchall' provision, providing relief only for injuries not otherwise

adequately provided for by ERISA." *Id.* (citing *Katz,* 985 F. Supp. at 1161). The court emphasized that "[a]t the time the . . . order was entered, [plaintiff] had an adequate remedy under § 1132(a)(1)(B), a position which she was **strenuously asserting in Count I of her complaint**." *Id.* at 1089 (emphasis added). The court remarked that it was irrelevant to the analysis whether plaintiff ultimately prevails on the ERISA claim on the merits; "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor." *Id.*

Similarly, because Plaintiff appears to have an adequate remedy under § 1132(a)(1)(B) as alleged in Count I against United, Count III against United must be dismissed without prejudice. *See RMP Enterprises LLC v. Connecticut Gen. Life Ins. Co.*, 2018 WL 2973389, at *5 (S.D. Fla. June 13, 2018), *appeal dismissed,* 2019 WL 3021231 (11th Cir. Apr. 8, 2019) ("the Court notes that a plaintiff cannot alternatively plead counts under § 1132(a)(1)(B) and § 1132(a)(3).").

Plaintiff points to the Eleventh Circuit's holding in *Jones* that reversed a District Court's dismissal of a § 502(a)(3) claim where the court also dismissed the plaintiff's § 502(a)(1)(B) claim. *See Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1074 (11th Cir. 2004). However, Plaintiff neglects to address *Jones'* distinction from the instant case—Plaintiff here still maintains he has a cause of action under § 502(a)(1)(B) making this analogous to *Katz*, not *Jones*. (DE 11 18 at 2-5). The Eleventh Circuit differentiated the two holdings: "[b]ecause the Appellants **concede for purposes of this claim that they are not entitled to the group life benefit** under the terms of their plan, the Appellants 'must rely on [§ 502(a)(3) ] or they have no remedy at all.'" *Id.* (quoting *Varity,* 516 U.S. at 515) (emphasis added). The court remarked, "[w]e cannot extend *Katz* to deny the Appellants the remedy that the Supreme Court explicitly endorsed in *Varity,* or allow it to effectively eviscerate ERISA's clear mandate that fiduciaries discharge

their duties 'solely in the interest of the participants and beneficiaries.'" *Id.* (citing ERISA § 404(a), 29 U.S.C. § 1104(a)). In sum, the court held "the district court properly dismissed the Appellants' Section 502(a)(1)(B) claims, but erred in dismissing their Section 502(a)(3) claim, because participants in an ERISA-governed plan that rely to their detriment on a fiduciary's misrepresentations of the plan's terms may state a claim for 'appropriate equitable relief' under Section 502(a)(3) if they have no adequate remedy elsewhere in ERISA's statutory framework." *Id.*

Plaintiff's Count I will proceed against United as a viable claim, and therefore Plaintiff's Count III is dismissed because Count I's § 1132(a)(1)(B) offers an adequate remedy for the ERISA violations alleged in Count III. The Court will nevertheless briefly address Plaintiff's arguments about the difference between the relief sought in Counts I and III.

## C. Repackaging

Plaintiff contests United's argument that Count III is repackaging Count I by insisting that the § 1132(a)(3) breach of fiduciary duty claim "is based solely on UHC's continuous arbitrary decisions and inconsistencies in deciding whether Medicare and/or UHC pay first and UHC's failure to provide a full and fair review of Plaintiff's claims on account of breaching their duty of loyalty to the Plaintiff. Plaintiff seeks injunctive and declaratory relief as to the inconsistent actions of UHC, *not unpaid benefits*." (DE 19 at 8). Plaintiff then admits "[w]hile the harm to [Plaintiff] is the same in Counts I and III, the wrongful conduct involved is not the same nor are the potential remedies." (*Id.*).

However, the Eleventh Circuit has made clear that the relief sought is immaterial to the analysis of a claim under a catchall ERISA provision:

> Thus, the relevant concern in *Varity,* in considering whether the plaintiffs had stated a claim under Section 502(a)(3), was whether the plaintiffs also had a cause

of action, based on the same allegations, under Section 502(a)(1)(B) or ERISA's other more specific remedial provisions. As the Court explained, the purpose of Section 502(a)(3) was to "act as a safety net, offering appropriate equitable relief for injuries caused by violations [of ERISA] *that § 502 does not elsewhere adequately remedy.*" *Id.* at 512, 116 S.Ct. at 1078 (emphasis added). **The relief that the plaintiffs sought in their complaint was not relevant to this inquiry.**

*Jones*, 370 F.3d at 1073 (emphasis added). Accordingly, Plaintiff's arguments are without merit.

4. Count IV:

United and HCA both argue that ERISA preempts Plaintiff's state law claim for intentional infliction of emotional distress (IIED). (DE 15 at pdf 9-11; DE 13 at 9-11). In response, Plaintiff acknowledges that ERISA generally preempts state law causes of action that relate to claims for employee benefits, but Plaintiff nonetheless urges the Court to look to a recent ruling from the Northern District of California that permitted an exception to that general rule. (DE 18 at 11-13; DE 19 at 8-10).

Additionally, Defendants insist that even if the IIED claim were not preempted, the conduct alleged in the Complaint fails to satisfy Florida's standard for outrageous conduct under the tort. (DE 15 at pdf 11; DE 13 at 11-13). Plaintiff responds that the Complaint sufficiently alleges a claim for IIED under Florida law. (DE 18 at 13-16; DE 19 at 10-13). Plaintiff argues multiple factors that bolster a claim of IIED that might not otherwise meet the level of outrageousness required: 1) Defendants were aware of and had knowledge of Plaintiff's susceptibilities to emotional distress; and 2) there is an unequal position of the parties because Defendants can assert power over the Plaintiff and directly affect his interests. (*Id.*).

A. **Preemption:**

The United States Supreme Court has made clear that "[i]f a state law 'relate[s] to ... employee benefit plan[s],' it is pre-empted. § 514(a)." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987). It "observed in the past that the express pre-emption provisions of ERISA are

deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" *Id.* at 45-46 (quoting *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 523 (1981)). Moreover, the Court has "emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Id.* at 47–48 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98 (1983)).

This Circuit has held "[w]ith exceptions that are irrelevant here, ERISA 'supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....'" *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir. 1987) (quoting 29 U.S.C.A. § 1144(a)). "A party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren*, 114 F.3d at 187. The Eleventh Circuit has acknowledged, "[a]dmittedly some state laws affect employee benefit plans too tenuously to be characterized fairly as relating to employee benefit plans," but emphasizes that "if a state law claim arises out of the administration of benefits under a plan, the claim is preempted." *Howard*, 807 F.2d at 1564. Moreover, the court has expressly held that a claim for IIIED stemming from the refusal to pay benefits is preempted: "[a]lthough the state law causes of action on which [plaintiff] relies do not exclusively concern the regulation of employee benefit plans, their use here 'relates to' an employee benefit plan regulated by ERISA, thus [plaintiff]'s state law claims are preempted." *Id.*

Plaintiff urges this Court to look outside the Eleventh Circuit to consider how other courts have found that tort claims are not preempted by ERISA. However, in addition to not being the law of this Circuit, the facts in the cases highlighted by Plaintiff are largely distinguishable from those alleged in Plaintiff's Complaint.

Plaintiff points to a case out of the Northern District of California which found that the plaintiff's claim of IIED was "based on allegations that involve harassing and oppressive conduct independent of the duties of administering an ERISA plan" and therefore, the "claim falls outside the scope of ERISA and could not have been brought under Section 502(a)(1)(B)." *Daie v. The Reed Grp., Ltd.*, 2015 WL 6954915, at *2 (N.D. Cal. Nov. 10, 2015). The court concluded the Ninth Circuit Court of Appeals holds that it "must determine whether plaintiff's claim for intentional infliction of emotional distress 'relies on a legal duty that arises independently of ERISA' and that 'would exist whether or not an ERISA plan existed.'" *Id.* (quoting *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). The court explained that the:

> defendants' duty not to engage in the alleged tortious conduct existed independent of defendants' duties under the ERISA plan. Specifically, the complaint alleges such tortious conduct as **falsely accusing plaintiff of "lying" about his disability, urging plaintiff to take experimental medications**, **inducing plaintiff to increase his medications**, **forcing plaintiff "to undergo a litany of rigorous medical examinations without considering their results**," and pressuring plaintiff "to **engage in further medical testing that it knew would cause ... pain, emotional distress and anxiety**." These allegations are based on events that involved harassing and oppressive conduct. Defendant's actions implicate an independent legal duty.

*Id.* at *3 (emphasis added).

Moreover, the Ninth Circuit has carefully distinguished IIED claims that are "preempted because the emotional distress they allegedly suffered arose from [defendant]'s failure to timely pay them benefits. The harm they suffered was inextricably intertwined with the plan's decision not to pay." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001). The court held "to find [defendant] liable for intentional infliction of emotional distress for not paying benefits would be tantamount to compelling benefits, which assuredly 'encroaches on the relationships regulated by ERISA.'" *Id.* (citation omitted). The court contrasted that category of

claims with a plaintiff whose claims were not preempted where he alleged a defendant hired private investigators to surveil the plaintiff. *Id.* The court found the plaintiff "is not seeking to obtain through a tort remedy that which he could not obtain through ERISA. . . . his damages for invasion of privacy remain whether or not [defendant] ultimately pays his claim. His tort claim does not depend on or derive from his claim for benefits in any meaningful way." *Id.*

Even considering the out-of-Circuit caselaw as suggested by Plaintiff, his IIED claims fall into the category of "'asserting improper processing of a claim for benefits under an insured employee benefit plan,'" which are universally understood to be preempted. *Id.* (quoting *Pilot Life*, 481 U.S. at 43).

The facts of the instant case are distinguishable from the facts of *Daie* because Plaintiff's Complaint alleges "[t]he acts and/or omissions by Defendants, and arbitrary and capricious discretion described herein constitute extreme and outrageous conduct against the Plaintiff and are beyond all possible bounds of decency. These acts emotionally crippled and tortured Plaintiff in his state of physical susceptibility." (DE 1 at 17). However, these allegations expressly "relate to" the administration of benefits. Even under the construction of Plaintiff's response to the Motion to Dismiss, it fails to allege a "tort claim [that] does not depend on or derive from his claim for benefits in any meaningful way." *Dishman*, 269 F.3d at 983. Plaintiff insists his "claim is not solely based on the denial of benefits, instead he seeks damages from Defendant's discrimination against him on account of his disability, on account of disproportionate treatment by virtue of being a COBRA participant, being continually ignored and lied to, and the manifestation of physical symptoms due to severe emotional distress." (DE 18 at 13). However, the Court finds Plaintiff's allegations are inextricably intertwined with the refusal to pay benefits.

The state law claim fails as a matter of law because it is inextricably intertwined with the refusal to pay benefits and thus is preempted by ERISA.  *Howard*, 807 F.2d at 1564.

2. **Prima facie case of IIED**

The Court notes even if the IIED claim were not preempted, the facts alleged do not rise to the requisite level of outrageousness to state a claim for IIED in Florida.  *See Kaye v. Humana Ins. Co.*, 2009 WL 455438, at *10 (S.D. Fla. Feb. 23, 2009) ("While the conduct alleged, if true, is clearly wrong, it does not meet the standard of being 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community.'") (citation omitted)

5. Count V:

Count V alleges a violation of COBRA for failing to provide a copy of the SPD with the Notice to Plaintiff and for failing to provide continuation coverage that was identical to the coverage Plaintiff had pre-COBRA election.  (DE 1 at ¶¶ 82-102).  Count V additionally alleges that Defendants violated the MSP Act by designating Medicare as the primary plan and payer.  (*Id.* at ¶¶ 103-110).

United moves to dismiss Count V, arguing that as a claims administrator, it is not a proper defendant in an MSP Act cause of action.  (DE 13 at 14).  United also argues that the MSP Act does not require the Plan to be the primary payer for COBRA participants.   Therefore, the Plan was not a primary plan and United cannot be liable for failing to provide primary payment in accordance with 42 U.S.C. § 1395y(b)(1)(B)(i).  (*Id.* at pdf 15-18).

HCA moves to dismiss Count V on the basis that Plaintiff failed to plead a standalone COBRA violation because what Plaintiff alleges must be asserted through ERISA.  (DE 15 at pdf 12-13).  HCA also argues that Plaintiff fails to plead an MSP Act violation because "Medicare

ALWAYS is the primary payer for services and treatments incurred while an individual receives coverage through COBRA." (*Id.*).

Plaintiff responds that other district courts have recognized and sustained a standalone COBRA claim defeating a motion to dismiss. (DE 18 at 16-17). Plaintiff contests HCA's argument that it provided identical coverage and that Medicare is the primary payer. (*Id.* at 17). Plaintiff reasserts that the SPD was deficient under § 1022 because the provisions regarding "when Medicare and COBRA are coordinated and the beneficiary does not have Medicare Parts B, C, D are not sufficiently accurate and comprehensive to reasonably apprise Mr. Gardi of his rights and obligations under the Plan." (*Id.* at 18). Finally, Plaintiff argues that Medicare regulations are silent as to COBRA and the MSP Act when the COBRA participant does not have Medicare Parts B, C, and D. Accordingly, Plaintiff argues 42 C.F.R. §411.206(a) does not apply when services Plaintiff received through UHC are not covered under Medicare A. (*Id.* at 18-19).

### A. **Standalone COBRA claim**

HCA points to an Eleventh Circuit opinion which held, "[i]f an employer fails to provide a terminated employee notice of his COBRA rights, the employee may file a civil action to enforce his rights. 29 U.S.C. § 1132(a)." *DeBene v. BayCare Health Sys., Inc.*, 688 F. App'x 831, 839 (11th Cir. 2017). HCA argues this demonstrates the Eleventh Circuit views ERISA as the proper statutory scheme for redress of such COBRA violations. (DE 15 at pdf 12).

In response, Plaintiff highlights several out-of-Circuit cases that he argues support a stand-alone COBRA claim. (DE 18 at 16). He argues "[i]n *Downes* the court held it must assume the truth of the allegations and that the plan beneficiary should have received healthcare benefits under a relevant ERISA-governed plan, as such, her COBRA claim survived. (*Id.* citing *Downes v. J.P. Morgan Chase & Co.*, 2004 U.S. Dist. LEXIS 10510, 33 Employee Benefits Cas. (BNA) 1273).

The Court is persuaded that HCA's interpretation of *DeBene*'s holding is correct but will proceed to address the additional arguments in turn. *DeBene*, 688 F. App'x at 839.

### B. MSP: Primary Payer & Plan

"Family member means a person who is enrolled in an LGHP[2] based on another person's enrollment; for example, the enrollment of the named insured individual. Family members may include a spouse (including a divorced or common-law spouse), a natural, adopted, foster, or stepchild, a parent, or a sibling."  42 C.F.R. § 411.201.  The general rule is that Medicare is secondary to the LGHP:

> (a) Medicare benefits are secondary to benefits payable by an LGHP for services furnished during any month in which the individual—
>> (1) Is entitled to Medicare Part A benefits under § 406.12 of this chapter;
>> (2) Is covered under an LGHP; and
>> (3) Has LGHP coverage by virtue of his or her own or a family member's current employment status.

42 C.F.R. § 411.204(a).

However, under COBRA coverage, Medicare is the primary payer:

> (a) General rule. CMS makes **Medicare primary payments** for services furnished to disabled beneficiaries covered under the LGHP by virtue of their own or a family member's current employment status if the services are—
>> (1) Furnished to Medicare beneficiaries who have declined to enroll in the GHP;
>> (2) **Not covered under the plan for the disabled individual or similarly situated individuals;**
>> (3) Covered under the plan but not available to particular disabled individuals because they have exhausted their benefits under the plan;
>> (4) Furnished to individuals whose COBRA continuation coverage has been terminated because of the individual's Medicare entitlement; or
>> (5) **Covered under COBRA continuation coverage notwithstanding the individual's Medicare entitlement.**

---

[2] "LGHP" refers to "Large Group Health Plan." *See* 26 U.S.C. § 5000(b)(2) ("The term 'large group health plan' means a plan of, or contributed to by, an employer or employee organization (including a self-insured plan) to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families, that covers employees of at least one employer that normally employed at least 100 employees on a typical business day during the previous calendar year.").

42 C.F.R. § 411.206 (emphasis added). The regulation "Taking into account entitlement to Medicare" expressly allows LGHPs to take into account a COBRA continuant's entitlement to benefits under Medicare:

> (b) Permissible actions.
> ….
> (2) **A GHP[3] or LGHP may pay benefits secondary to Medicare** for an aged or disabled beneficiary who has current employment status if the **plan coverage is COBRA continuation coverage** because of reduced hours of work. Medicare is primary payer for this beneficiary because, although he or she has current employment status, the GHP coverage is by virtue of the COBRA law rather than by virtue of the current employment status.

42 C.F.R. § 411.108

Accordingly, because Medicare was the primary payer due to Plaintiff's COBRA election, he does not have a cause of action against either of the Defendants.

6. <u>Count VI:</u>

### A. Pleadings against HCA:

HCA's Motion to Dismiss argues "Count VI does not appear to be asserted against HCA. None of the allegations pleaded in support of Count VI address HCA or any purported wrongful actions by HCA. To the extent plaintiff seeks relief for any alleged COBRA violation under Count VI, the claim must be dismissed for failure to satisfy even the most basic pleading standards under the Federal Rules of Civil Procedure." (DE 15 at pdf 15).

Plaintiff fails to meaningfully address HCA's pleading argument. (DE 18 at 20). Plaintiff responds:

---

[3] "GHP" refers to "group health plan." *See* 26 U.S.C. § 5000(b)(1) ("The term 'group health plan' means a plan (including a self-insured plan) of, or contributed to by, an employer (including a self-employed person) or employee organization to provide health care (directly or otherwise) to the employees, former employees, the employer, others associated or formerly associated with the employer in a business relationship, or their families.").

Plaintiff has sufficiently alleged claims for denial of continuing coverage in violation of COBRA. Paragraphs ¶¶ 15,17,20,22,23,27,28,29,32,34,39,41,42, of the Complaint clearly allege how HCA and UHC's actions have frustrated the Plaintiff's seamless transition to continuation of coverage specifically related to the withholding of IGG treatment and medications. [ECF No. 1, p. 25, ¶112]. UHC's withholding coverage for said medications was in violation of COBRA because it required evidence of insurability to provide coverage for specific medications. **HCA, as plan administrator has exercised discretion which has contributed to the Plaintiff's frustration of continuation of coverage in all respects**.

(*Id.*) (emphasis added).

Plaintiff's response fails to explain how Count VI can be read as a cause of action against HCA. Upon the face of the Complaint, Count VI only addresses United's actions and does not mention HCA. The standards of pleading require more to interpret this to be alleging COBRA violations by HCA.

### B. Evidence of Insurability:

Regardless, Count VI only points to one COBRA provision, which is the basis for the cause of action:

> **§ 1162. Continuation coverage**
> For purposes of section 1161 of this title, the term "continuation coverage" means coverage under the plan which meets the following requirements:
> . . .
> **(4) No requirement of insurability**
> The coverage may not be conditioned upon, or discriminate on the basis of lack of, evidence of insurability.

29 U.S.C. § 1162(4). The "coverage" referred to in § 1162(4) is COBRA. *See Matter of Appletree Markets, Inc.*, 19 F.3d 969, 974 (5th Cir. 1994) ("Moreover, the plan cannot condition the availability of COBRA coverage on evidence of insurability. *See* 29 U.S.C. § 1162(4)").

However, the Complaint fails to allege that Plaintiff was denied continuation of coverage through COBRA on the basis of his insurance status or evidence of insurability. The Complaint instead alleges that:

UHC violated this provision twice, in July 2018 when they refused to authorize IGG treatment, and again, on November 1, 2018, when UHC informed CVS Caremark that Mr. Gardi would be required to submit himself to additional blood tests and qualifications to obtain necessary an already approved IGG treatment, despite the fact that the IGG had been previously authorized from July 18, 2018 through October 14, 2018, Authorization No. A050314270 and again from October 15, 2018, through April 15, 2019, Authorization No. A0555041384.

(DE 1 at ¶ 114). These are not allegations about the availability of COBRA to Plaintiff but instead allege hurdles faced after enrolled in COBRA. The Plaintiff's Complaint states "[a]s a result of the divorce, the Plan Beneficiary then made a COBRA election to continue receiving medical benefits and coverage through the Plan under Group/Acc#: 730152 with Member ID: A903298509, Group Name: HCA, Inc. Coverage became effective on June 14, 2018 ("the Post-Cobra Period")." (DE 1 at ¶ 14).

The Court therefore finds that Count VI does not state a claim upon which relief may be granted against either United or HCA.

B. **MOTION FOR SANCTIONS**:

Plaintiff argues that attorney's fees are warranted because Defendants failed to confer with him regarding the Motion to Strike. (DE 25 at 2-3). Plaintiff alleges that on Friday, May 10, 2019 at approximately 5:00 pm, United emailed Plaintiff's counsel relative to the Chae Affidavit and sent a follow-up email at 12:48 pm on May 13. (*Id.* at 2). Plaintiff's counsel alleges she replied that her assistant would be reaching out to schedule the meet and confer call. (*Id.*). Plaintiff's counsel explains that her assistant made multiple attempts to schedule the call, "however, counsel for United Healthcare persisted in attempting to make the undersigned appear for a call on May 13, 2019 despite her unavailability due to client meetings. He thereafter filed the Motion to Strike without conferring with the undersigned." (*Id.*). Plaintiff concedes "[a] telephone conference did take place on May 14, 2019 (for less than two minutes) related to the Motion to Strike wherein

counsel for United Healthcare asked whether the undersigned would agree to the relief requested. However, undersigned counsel was unable to agree due to her needing time to brief the cases presented by counsel for United Healthcare in the Motion to Strike filed the previous day." (*Id.*).

Plaintiff's Counsel cites Rule 7.1(a)(3) which requires pre-filing conferences prior to the filing of a motion. (*Id.*).

United's certificate of counsel on the Motion to Strike (DE 20), filed on May 13, 2019, stated:

> Pursuant to S.D. Fla. L.R. 7.1(a)(3), the undersigned counsel Daniel Alter e-mailed Plaintiff's counsel of record Maria Santi on Friday afternoon, May 10, 2019, to confer about the relief in this Motion. When the undersigned defense counsel received no response, he sent a follow-up email to Maria Santi at 12:48 pm on Monday, May 13, 2019 with a request to speak with Plaintiff's counsel.
>
> The undersigned counsel was informed today that Ms. Santi is unavailable to confer until tomorrow, May 14, 2019, at the earliest. In view of the approaching deadline for United to reply in support of its Motion to Dismiss, United files its Motion to Strike at this time. United will amend its Certificate of Conference as appropriate once Plaintiff's counsel Maria Santi arranges to speak with the undersigned defense counsel.

(DE 20 at 7). United subsequently filed an Amended Certificate of Conference Regarding United's Motion to Strike Chae Affidavit and All References to It on May 14, 2019. (DE 22). The amended certificate of compliance stated that:

> Counsel for the Co-Defendant HCA Inc. ("HCA"), Emily Friedman, also participated in this morning's conference because HCA plans to seek similar relief in the form of its own Motion to Strike. The parties were unable to reach agreement as to the relief that United requests in its Motion to Strike or the relief that HCA intends to request in its forthcoming Motion to Strike. Plaintiff intends to respond to United's Motion to Strike and any forthcoming Motion to Strike submitted by HCA.

(*Id.* at 1).

Local Rule 7.1(a)(3) requires that "the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected

by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion. Counsel conferring with movant's counsel shall cooperate and act in good faith in attempting to resolve the dispute." S.D. Fla. L.R. 7.1(a)(3).

The rule continues: "[a]t the end of the motion . . . counsel for the moving party shall certify either: (A) that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been able to do so; or (B) that counsel for the movant has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, which efforts shall be identified with specificity in the statement (including the date, time, and manner of each effort), but has been unable to do so." *Id.*

The rule concludes "[f]ailure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion and impose on counsel an appropriate sanction, which may include an order to pay the amount of reasonable expenses incurred because of the violation, including a reasonable attorney's fee." *Id.*

The Court finds that United complied with Local Rule 7.1(a)(3) by making reasonable attempts to meet and confer and specifying what those attempts were in the certificate of conference. (DE 20 at 7). Furthermore, the next day, United filed an amended certificate of conference once the conference took place. (DE 22 at 1). Accordingly, the Court finds sanctions against United or HCA are not warranted.

## IV.    CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant United's Motion to Strike **(DE 20)** and Defendant HCA's Motion to Strike **(DE 21)** are **GRANTED**.  The Affidavit of Ryan N. Chae **(DE 18-1, 19-1)** is hereby **STRICKEN** and shall be removed from the Court's docket.

2. Defendant United's Motion to Dismiss **(DE 13)** is **GRANTED**.  Count I may proceed against United.

3. Defendant HCA's Motion to Dismiss **(DE 15)** is **GRANTED**.

4. Plaintiff is granted leave to amend Counts I, II, III, and V.  Counts IV and VI are dismissed with prejudice.

5. The Parties are to file a Joint Scheduling Report with the Court within 14 days from the issuance of this Order.

    **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30th day of January, 2020.


                                     KENNETH A. MARRA
                                     United States District Judge